UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

In re:  203-205 North 8th Street Loft, LLC,                  Chapter 11

                                                                        Case No. 20-40793 (NHL)

                    Debtor.

-----------------------------------------------------------------------x

In re:  3052 Brighton First, LLC,                                       Chapter 11

                                                                        Case No. 20-40794 (NHL)

                    Debtor.

-----------------------------------------------------------------------x

### *EX PARTE* APPLICATION FOR THE ENTRY OF AN ORDER DIRECTING THE EXAMINATION OF THE DEBTORS, ROSENBERG MUSSO & WEINER, LLP AND CHAIM MILLER AND THE PRODUCTION OF DOCUMENTS PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

TO:    THE HONORABLE NANCY HERSHEY LORD
       UNITED STATES BANKRUPTCY JUDGE

       JEST Holdings LLC ("JEST" or "Proponent"), by its undersigned counsel, respectfully

submits this Application (the "Application") for the entry of an order pursuant to Section 105(a)

of Title 11, United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and directing the production and

turnover of documents, books, records and communications by and the examination of the Debtors

(as defined below), Rosenberg Musso & Weiner, LLP and Chaim Miller, as more particularly set

forth in this Application and the accompanying proposed order (the "Proposed Order"), a copy of

which is annexed hereto as Exhibit A.  In support of this Application, JEST respectfully sets forth

and represents as follows:

## PRELIMINARY STATEMENT

1.       By letter dated January 23, 2023 [Docket No. 253], JEST informed the Court that the Debtors, which received $2.1 million from JEST to be held in escrow by Debtors' counsel, Rosenberg Musso & Weiner, LLP ("RMW"), have refused to return most of the escrowed funds to JEST despite repeated requests.  Initially, although RMW did not contest that the full $2.1 million was to be returned to JEST, it offered JEST a series of excuses why the funds could not be repaid in full in one payment to JEST.

2.       However, at the status conference held on January 24, 2023, RMW changed its tune.  There, for the first time Bruce Weiner, Esq, on behalf of RMW, advised the Court that the Debtors were not party to the underlying Escrow Agreements (as defined below), that the escrowed funds were not property of the Debtors' estates and that, to the extent JEST sought a return of the escrowed funds, JEST should seek such relief in state court.

3.       Mr. Weiner's response raises more questions than it answers – questions JEST seeks to answer through Rule 2004 discovery.  As discussed herein in detail, RMW as escrow agent entered into a series of post-petition Escrow Agreements with JEST in connection with and in furtherance of an anticipated settlement agreement by and between the Debtors and their respective secured creditors.  If Debtors' counsel was serving as escrow agent in connection with a potential Debtor settlement and wasn't acting on behalf of the Debtors, who exactly was Debtors' counsel representing other than the Debtors during these Chapter 11 cases?

4.       Conflicts of interest issues aside, the identity of RMW's client(s) in connection with the Escrow Agreements and the identity of any unauthorized recipient of the funds and its purpose will inform JEST on how to proceed in respect of compelling turnover of attorney escrow funds being improperly and unlawfully withheld.  To the extent that RMW was actually representing the

Debtors in connection with Escrow Agreements, such action surely belongs in this Court. Indeed, it stretches the bounds of credulity that this Court somehow lacks jurisdiction to entertain issues relating to the return of attorney escrow funds, held by Debtors' counsel, during the pendency of these Chapter 11 cases and in connection with a proposed settlement by and between the Debtors and their respective secured creditors.

5.      On one point all parties agree – the escrowed funds are not property of the Debtors' estates. As such, these funds cannot be and should not have been used to make distributions to parties in interest under the Debtors' Chapter 11 plans. This Application seeks authority to examine the Debtors, RMW and Mr. Miller to determine whether any amount of the escrowed funds was used to satisfy Chapter 11 plan payments or was otherwise transferred out of RMW's attorney escrow account and, if so, to whom. To the extent RMW or anyone else caused the escrowed funds to be used to fund payments in connection with the Debtors' Chapter 11 plans or otherwise transferred such funds to or for the benefit of insiders (who RMW may have been acting on behalf of in connection with the post-petition Escrow Agreements), this would represent a conversion of attorney escrowed funds.

6.      Having terminated the Escrow Agreements in accordance with their terms, JEST is at a complete loss why RMW is refusing to return its funds. RMW's insinuation that it was not acting on behalf of the Debtors in connection with the Escrow Agreements raises an acute concern that RMW was acting on behalf of the Debtors' insiders, particularly Chaim Miller. In this regard, Mr. Miller has a long history of defrauding real estate investors. For example, in *Donog v. Miller, et al.*, 16-CV-5836 (EDNY) (NGG) (JO), District Judge Garaufis (EDNY) issued a preliminary injunction after

> The [Magistrate's Report & Recommendation] noted that Miller has refused to
> comply with subpoenas, resulting in a contempt order against him; that Defendants

3

used the proceeds of the 'unauthorized sale of the John Lofts Property to satisfy a separate financial obligation and then falsified title documents to conceal the unlawful transaction'; and that Defendants have previously violated a TRO and held liable for fraudulent conveyance to avoid paying a judgment in excess of $1.5 million.

\*       \*       \*       \*       \*

In light of the extensive and uncontested allegations of [Miller's] attempts to misappropriate investor assets and evade creditors, the court has no difficulty concluding that, if no preliminary injunction were to issue, Defendants would likely attempt to transfer or dissipate the properties that are the subjects of the equitable-lien claims discussed above.

*See* Memorandum and Order, dated March 23, 2018, annexed hereto as Exhibit B.  Indeed, as this Court is aware, Mr. Miller (together with other insiders) failed to consummate a purchase of the Debtors and, as a result, forfeited a $1 million deposit [Doc. No 242].  Surely, neither Mr. Miller nor anyone else was authorized to use JEST's funds towards the insiders' sale deposit, nor to forfeit same to the estate.

7.      That RMW has provided no information to JEST as to whether it continues to hold any of the escrowed funds, whether such funds were transferred to anyone other than JEST or even why RMW refuses to turn over the remaining escrowed funds to JEST, combined with RMW's vague statement that it was not representing the Debtors in connection with the Escrow Agreements, raises the very real concern that escrowed funds have been or may be unlawfully dissipated in these Chapter 11 cases.  RMW's attempt to send JEST on an uninformed wild goose chase to recover its escrows in state court should not be countenanced by this Court.

8.      JEST will be seeking addition relief in this Court in connection with the escrowed funds and hereby explicitly reserves all of its rights and remedies in connection with same, including to seek an injunction prohibiting RMW (or any other party that may be in possession of JEST's escrowed funds) from transferring any of the escrowed funds pending resolution of the underlying substantive issues.

## JURISDICTION AND STATUTORY PREDICATES

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

10.    The statutory predicates for the relief requested herein are Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2004 and 9016.

## BACKGROUND

11.    On February 6, 2020, each of 203-205 North 8th Street Loft, LLC ("203-205") and 3052 Brighton First, LLC ("3052", and together with 203-205, the "Debtors") filed a Chapter 11 petition for bankruptcy relief in the Bankruptcy Court for the Eastern District of New York, Case Nos. 20-40793 (NHL) and 20-40794 (NHL), respectively.

12.    By order entered in the 3052 Chapter 11 case and dated June 26, 2020 [Doc. No. 55], this Court authorized the retention of RMW as Chapter 11 counsel to 203-205.

13.    By order entered in the 3052 Chapter 11 case and dated June 26, 2020 [Doc. No. 54], this Court authorized the retention of RMW as Chapter 11 counsel to 3052.

14.    During the pendency of the Debtors' Chapter 11 cases, and while RMW was serving as Chapter 11 counsel to the Debtors, RMW and JEST entered into a series of escrow agreement (collectively, the "Escrow Agreements") in connection with an anticipated settlement by and among the Debtors and their respective secured creditors.

15.    Specifically, JEST and RMW, as Escrow Agent, are parties to that certain Escrow Agreement dated as of January 13, 2022, pursuant to which JEST deposited $250,000.00 with RMW, as Escrow Agent, "in connection with and furtherance of the anticipated settlement agreement between 203-205 North 8th Street Loft, LLC and its secured creditors North 8th Investor

5

LLC and 203-205 N 8th Street LLC." A copy of the January 13, 2022 Escrow Agreement is annexed hereto as Exhibit C.

16.     The January 13, 2022 Escrow Agreement provides, among other things, that "[n]otwithstanding the foregoing, [JEST] may at any time determine to terminate this Escrow Agreement upon written consent of JEST at which point the Deposit shall be immediately returned to [JEST]". January 13, 2022 Escrow Agreement, ¶ 4; *see also* ¶ 6 (upon termination "Deposit shall be immediately returned to [JEST]."

17.     JEST and RMW, as Escrow Agent, are also parties to that certain Escrow Agreement dated as of January 13, 2022, pursuant to which JEST deposited $500,000.00 with RMW, as Escrow Agent, "in connection with and furtherance of the anticipated settlement agreement between 3052 Brighton First, LLC and its secured creditors 3052 Brighton 1st Street II LLC and 3052 Brighton 1st Street LLC." A copy of the January 13, 2022 Escrow Agreement is annexed hereto as Exhibit D.

18.     The January 13, 2022 Escrow Agreement provides, among other things, that "[n]otwithstanding the foregoing, [JEST] may at any time determine to terminate this Escrow Agreement upon written consent of [JEST] at which point the Deposit shall be immediately returned to [JEST]". January 13, 2022 Escrow Agreement, ¶ 4; *see also* ¶ 6 (upon termination "Deposit shall be immediately returned to [JEST]."

19.     JEST and RMW, as Escrow Agent, are also parties to that certain Escrow Agreement dated as of June 21, 2022, pursuant to which JEST deposited $350,000.00 with RMW, as Escrow Agent, "in connection with and furtherance of the anticipated settlement agreement between 203-205 North 8th Street Loft, LLC and its secured creditors North 8th Investor LLC and

6

203-205 N 8th Street LLC." A copy of the June 21, 2022 Escrow Agreement is annexed hereto as Exhibit E.

20.     The June 21, 2022 Escrow Agreement provides, among other things, that "[n]otwithstanding the foregoing, [JEST] may at any time determine to terminate this Escrow Agreement upon written consent of [JEST] at which point the Deposit shall be immediately returned to [JEST]". June 21, 2022 Escrow Agreement, ¶ 4; *see also* ¶ 6 (upon termination "Deposit shall be immediately returned to [JEST]."

21.     Finally, JEST and RMW, as Escrow Agent, are parties to that certain Escrow Agreement dated as of November 2, 2022, pursuant to which JEST deposited $1,000,000.00 with RMW, as Escrow Agent, "in connection with and furtherance of the anticipated settlement agreement between 3052 Brighton First, LLC and its secured creditors, 3052 Brighton 1st Street II LLC and 3052 Brighton 1st Street LLC." A copy of the November 2, 2022 Escrow Agreement is annexed hereto as Exhibit F.

22.     Unlike the prior Escrow Agreements, the November 2, 2020 Escrow Agreement was ambiguous regarding the terms of its termination and return of the escrowed deposit. Accordingly, by email dated November 2, 2022, JEST wrote to the Debtors' principal, Chaim Miller, and Ms. Carmen Candelario of RMW as follows: "Missing a provision saying that after 60 days I can ask for the entire Deposit to be returned to me. Mr. Miller please confirm." *See* Exhibit G.

23.     By email dated November 2, 2022, Mr. Miller responded "Confirmed". *See* Exhibit G. The following morning, JEST forwarded Mr. Miller's response to Ms. Candelario at her RMW email address. *See* Exhibit G. That same afternoon, JEST received an email response originating from Ms. Candelario's RMW email responding "OK".

24.     Upon information and belief, however, at the time of the November 3, 2022 email Ms. Candelario had not been an employee of RMW for approximately five (5) years.  At no time did anyone at RMW inform JEST that it was not actually communicating with Ms. Candelario nor did RMW advise JEST who it was actually corresponding with.

25.     By letter dated December 8, 2022, JEST provided notice of termination of the Escrow Agreements in accordance with the terms thereof and requesting return of the escrowed deposits.  *See* Exhibit H.

26.     By December 20, 2022, despite repeated emails to Bruce Weiner and Ms. Candelario, JEST had still not received confirmation that the first $350,000 of escrowed deposits would be released as requested in the December 8, 2022.  Finally, on December 20, 2022, an individual using Ms. Candelario's RMW email address and signing off as Ms. Candelario responded to Jest as follows: "Bruce is at a mediation. As soon as the mediation is done, he we [sic] will call to confirm wire instructions. Please give me a number that he can call later today." *See* Exhibit I.

27.     This would mark the first in a series of excuses, including doctor's appointments, delays in wire transmissions, daily wire limits, etc. provided by the RMW firm as to why it could not wire the escrowed deposits to JEST.  As of the date hereof, RMW continues to unlawfully hold $1,250,000 in JEST's escrowed funds.

28.     Importantly, Mr. Miller, on behalf of the Debtors, requested that JEST provide an extension of time to return the remaining escrowed funds, which request was denied by JEST. Dissatisfied with JEST's refusal, it appears that Mr. Miller directed RMW, as Debtor's counsel, to simply withhold the remaining escrowed funds and obtain the requested extension by obfuscation.

29.     At no point did Mr. Weiner or anyone else at RMW even suggest that any portion of the escrowed funds need not be returned to JEST.  Rather, RMW strung JEST along with excuse after excuse until it became apparent that Debtors' counsel had no intention of releasing the escrowed funds.

30.     Accordingly, and in light of the fact that the Debtor was or would shortly start making Chapter 11 plan distributions, by letter dated January 23, 2023, JEST wrote to inform the Court about an issue that has the potential to overshadow everything else in this case – Chapter 11 counsel absconding with attorney escrow accounts.

31.     The seriousness of the issue notwithstanding, at the status conference held on January 24, 2023, Mr. Weiner simply refused to address it.  Instead, he flippantly (and incorrectly) suggested that this Court somehow lacks jurisdiction to consider issues relating to Escrow Agreements entered into post-petition by Debtors' counsel in connection with anticipated Debtor settlements and suggested that JEST pursue the issue in state court.  RMW is attempting to send JEST on a wild goose chase for the return of funds that RMW/the Debtors/Mr. Miller have absolutely no right to withhold.

## THE APPLICATION

32.     The Proponents' Application, pursuant to Bankruptcy Rule 2004 seeks an Order of this Court, substantially in the form of the proposed order (the "Proposed Order") annexed hereto as Exhibit A compelling the examination of and the production of the documents from the Debtors, RMW and Miller specified in the Subpoena and First Demand for the Production of Documents (the "Subpoena"), a copy of which is annexed hereto as Exhibit J.  The Documents are required to determine where the escrowed funds under the Escrow Agreements are being held and/or have

been transferred, who RMW was acting on behalf of in connection with the Escrow Agreements and to otherwise determine JEST's rights and remedies in connection with same.

33.     Rule 2004 provides "[o]n motion of any party in interest the court may order the production of documents with regard to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate . . . ." FED. R. BANKR. P. 2004.  The scope of a 2004 examination is very broad and "may be used to cover a wide range of subjects . . . ." *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 278 (3d Cir. 2013). *See also Martin v. Keybank of New York*, 208 B.R. 807, 810 (N.D.N.Y. 1997) (observing the "general rule that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted" (citation omitted)); *In re CENA's Fine Furniture, Inc.*, 109 B.R. 575, 577 n.2 (E.D.N.Y. 1990) ("The scope of a Rule 2004 examination is unfettered and broad . . . . Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds." (citation omitted)); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[C]ourts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions."); *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (noting that Rule 2004 examinations have "been likened to a . . . 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case" (citations omitted)).

34.     Here, the Proponent needs to be able to determine where the escrowed funds are being held (at RMW's JP Morgan Chase escrow account or otherwise), whether any portion thereof has been or is intended to be distributed to anyone other than JEST, who RMW was acting on behalf of in connection with the Escrow Agreements and what, if any, involvement Mr. Miller has in RMW's refusal to turn over the escrowed funds.  The documents sought are narrowly tailored to the foregoing.  Furthermore, the documents sought are not likely to be difficult to obtain.

10

35.    JEST has repeatedly advised RMW and Miller that it had committed to fund other transactions and was counting on the return of the escrowed funds to meet these commitments.  In such a situation and given the importance of the documents and their narrow scope, JEST submits that a deadline to produce of one week from service is entirely appropriate.

36.    Examinations under Bankruptcy Rule 2004 include within their scope, inter alia, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; any matter that may affect the administration of a debtor's estate; and any matter relevant to the case or to the formation of a plan. See, Fed. R. Bankr. P. 2004(a), (c) and (d). Clearly, the documents sought here fit well within such scope.

**37.**    Lastly, assuming that RMW, the Debtors or Miller do not accept service of the Subpoena, JEST respectfully requests permission to serve the annexed Proposed Order and Subpoenas in accordance with Federal Rule of Civil Procedure 45, by overnight mail upon RMW, individually and on behalf of the Debtors, the Debtors' and Mr. Miller's last known addresses, and by email to RMW counsel and Mr. Miller's counsel, and that such service be deemed good and proper service of such Proposed Order and Subpoenas.

## RESERVATION OF RIGHTS

38.    JEST expressly reserves its right to amend or supplement this Application and to introduce evidence supporting this Application at a hearing on the Application, should one take place.

## NOTICE

39.    This application is being brought on an ex parte basis.

40.    No previous application for the relief sought herein has been filed before this Court in this case.

WHEREFORE, JEST respectfully requests that this Court grant its Application in its entirety, enter an Order pursuant to Rules 2004 and 9016 of the Bankruptcy Rules, authorizing the Proponents to serve the Subpoenas directing the Debtors, RMW and Miller to produce and turnover the Documents and to appear for examination, and for such other and further relief as this Court deems just and proper.

Dated:  January 31, 2023
        New York, New York           WHITE & WOLNERMAN, PLLC


                                    By:_/s/ David Y. Wolnerman
                                      David Y. Wolnerman, Esq.
                                      950 Third Avenue, 11th Floor
                                      New York, New York 10022
                                       (212) 308-0603
                                      dwolnerman@wwlawgroup.com

                                *Counsel for JEST Holdings, LLC*